UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 06-265 (PJS/JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Calvin James,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on September 29, 2006, on the pretrial motions of the parties. Erica MacDonald, Assistant United States Attorney, appeared on behalf of the Government. James Ostgard, Esq., appeared on behalf of Defendant James. This matter is scheduled to be tried before United States District Court Judge Patrick J. Schiltz on January 9, 2007. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.  INTRODUCTION

Defendant James is charged with bank robbery. This Court held a pretrial motions hearing on September 29, 2006, at which Defendant James was present and represented by counsel. Three witnesses testified on behalf of the Government at the hearing: City of St. Paul Police Officer Murray Prust, Federal Bureau of Investigation Special Agent Benjamin Hruz and Ramsey County Sheriff Deputy Mark Suchy. The following exhibits were entered for the purposes of the hearing:

**Government Exhibit 1:**   Search Warrant for property on Old Hudson Road;

      **Government Exhibit 2:**    Application and Affidavit for Search Warrant, Search Warrant and Return for Room 419 at the Economy Inn located on East University in St. Paul, Minnesota; and

      **Defendant Exhibit 1:**    Receipt for room charges issued by Xcel Inn of St. Paul.

The parties requested and received permission to file post-hearing memoranda regarding Defendant's dispositive motion, including time for requested continuances. Defendant timely filed his post-hearing brief on October 29, 2006. The Government timely filed its post-hearing brief on November 15, 2006. Defendant's dispositive motion is now ripe for consideration and is addressed herein.

## II. FINDINGS OF FACT

St Paul Police Officer Murray Prust is a St. Paul Police Officer with eight years of patrol experience. Ben Hruz has conducted hundreds of bank robbery investigations as Special Agent with the Federal Bureau of Investigation, where he has worked for ten years. Deputy Mark Suchy is an 8-year veteran of the Ramsey County Sheriff's Department, and has been a part of the Special Investigations Unit for two years.

### A. Bank Robbery on July 23, 2006

On July 23, 2006, a TCF Bank located on East Lake Street in Minneapolis, Minnesota, was robbed. The robber entered the bank and demanded cash. The robber received money and left the bank. A dye pack had been included with the funds given to the robber. A dye pack is a security device that will detonate after the robber leaves the bank. The detonation emits gas that stains surrounding material with red dye. The robber of the TCF Bank was described as a black male, approximately five feet-eleven inches, approximately twenty to thirty years old, and weighing approximately 185 pounds. The robber's image was captured by a video surveillance camera inside of the bank.

### B. Investigation of the Bank Robbery

The FBI initiated an investigation of the bank robbery. On July 31, 2006, Special Agent Hruz received a telephone call from St. Paul Police Officer Sheila Lambie. Officer Lambie told Special Agent Hruz that a reliable informant had told police about seeing Calvin James in possession of red dye-stained money. Officer Lambie also told Special Agent Hruz that the informant said Calvin James was in a motel room at the Xcel Inn in St Paul.

Upon investigating the name "Calvin James," Special Agent Hruz learned the FBI had an open file on Mr. James for a previous bank robbery. Special Agent Hruz compared James' booking photograph with the image of the TCF bank robber taken by the bank's surveillance camera. Special Agent Hruz concluded the two photographs generally matched and provided enough to proceed in investigating Mr. James as a suspect in the July 23 robbery of the TCF Bank.

Special Agent Hruz and Officer Lambie arranged to meet to discuss and plan the investigation of Mr. James. However, before Special Agent Hruz had the opportunity to meet with Officer Lambie, he received a telephone call from St Paul Police Officer Murray Prust regarding red dye-stained money Officer Prust had found in a St. Paul motel room during Officer Prust's investigation of a sexual assault allegedly committed earlier that day at the Xcel Hotel. Officer Prust indicated the suspect in the assault investigation was Calvin James. Prior to the telephone call from Officer Prust, Special Agent Hruz had no knowledge of the on-going investigation of Mr. James for sexual assault.

### C. Investigation of Sexual Assault at the Xcel Inn

Shortly after 9:00 a.m. on the morning of July 31, 2006, the St Paul Police Department received a report of an assault that had occurred at the Xcel Inn in St. Paul. Officer Prust responded to the call, and

was informed by dispatch that there was a female who was in the lobby of the Xcel Inn who was claiming to have been assaulted and the suspect was fleeing. Officer Prust drove towards the Xcel Inn. Before he arrived, however, he observed a man he recognized to be the manager of the Xcel Inn outside of a Super America located two blocks from the Inn. Officer Prust recognized the man as the manager from prior official visits to the Xcel Inn. Officer Prust knew a separate canine police unit was on its way to the Inn, and he stopped at the Super America to speak with the hotel manager. The hotel manager was out of breath when Officer Prust reached him. The manager told Officer Prust he had chased the fleeing suspect but the suspect had vanished. The manager told Officer Prust he thought the suspect might have boarded a city bus near the Super America.

Officer Prust then went to the Xcel Inn, arriving in full uniform and in a squad car approximately five minutes after receiving the initial call from police dispatch. He went to the manager's officer where he found the female victim sitting on a chair. The victim was crying, rocking back and forth and having a difficult time breathing. A member of the Xcel Inn staff was trying to give the victim water, but she kept grabbing her throat and spitting the water out. Officer Prust observed marks on the victims head that appeared to be injuries from the alleged assault.

Officer Prust attempted to talk with the victim, but she was very upset and had difficulty speaking. The victim was able to tell Officer Prust that she had been at the Inn with Calvin James, who was a family friend. The victim told Officer Prust that she and Mr. James had packed up their belongings and were leaving the motel room when Mr. James rammed her head against the door several times, grabbed her throat and threw her to the ground. The victim told Officer Prust that after the assault, Mr. James "fled with all his stuff" and she went to the motel's lobby.

While Officer Prust was speaking with the victim, the manager of the Xcel Inn retrieved a photograph of the person who registered for Room 322 and told Officer Prust that the registrant was Calvin James. The manager also told Officer Prust that Mr. James had made payment on the room through that day, and that he believed Mr. James was supposed to be checking out. Officer Prust then contacted the paramedics, who arrived and transported the victim to Regions Hospital.

### D. Officer Prust's First Entry into Room 322 of the Xcel Inn

After the paramedics left the Xcel Inn to transport the victim to the hospital, Officer Prust spoke with the hotel manager, asking if the manager had gone into Room 322. The manager told Officer Prust he had not because he was afraid. Officer Prust went with the manager to Room 322 where the manager used a key card to gain access to the room. Officer Prust entered the room to look for any evidence that would corroborate the victim's account of the assault. Officer Prust noticed items that appeared to be drug paraphernalia in the room, but observed no personal items in the room. He also noticed that trash had been packed into the room's garbage cans. Based upon his training and experience, Officer Prust concluded Room 322 was vacant. At no time during this initial entry into Room 322 did Officer Prust observe red dye stains on any items in the room. He conducted a visual observation of Room 322, but did not conduct a full search, did not open any drawers or closets, and did not attempt to process the scene.

Officer Prust left Room 322 and went to the hospital to check on the victim. While talking with the victim, Officer Prust was told that she had been held against her will by Mr. James for several days and had been sexually assaulted. The victim remained visibly upset and was crying as she spoke to Officer Prust. The victim also told Officer Prust that Calvin James had a large amount of money while at the room at the Xcel Inn, and that the money was in a black bag with red dye stains on it.

### E.     Officer Prust's Second Entry into Room 322 of the Xcel Inn

Officer Prust left the hospital and went to the police station to pick up supplies necessary to process the scene at the Xcel Inn. He then returned to Room 322 at the Xcel Inn, arriving shortly after 11:00 a.m. Officer Prust dismissed the police officer who was guarding Room 322 and learned that no one had come forward in his absence to claim Room 322 as his or her own. He began to process the room for a sexual assault, collecting the sheets and comforter as evidence. As Officer Prust began to go through the trash can in the room, he noticed cut pieces of United States currency with red dye stains on them. He also noticed towels with faded red dye on them and a piece of cardboard with a large amount of red dye stain on it. This was the first time Officer Prust had noticed any red dye stains in Room 322.

### F.     Merger of the Bank Robbery and Assault Investigations

Officer Prust suspected the red dye stains might have come from a dye pack and placed a telephone call to the FBI to inquire about how a red dye pack might appear on items once detonated. Officer Prust spoke to Special Agent Hruz and told him about his sexual assault investigation at the Xcel Inn. Special Agent Hruz informed Officer Prust that Mr. James was being investigated as a suspect in the July 23 robbery of the TCF Bank. Special Agent Hruz told Officer Prust that the FBI had previously been in contact with Sergeant Kevin Moore of the St Paul Police Department Special Investigation Unit, and instructed Officer Prust to contact Sergeant Moore. Officer Prust contacted Sergeant Moore who instructed Officer Prust to stop the processing of the Xcel Inn scene and wait for the arrival of the FBI. Officer Prust then stopped all activity in Room 322 and "froze" the room until the FBI arrived.

Special Agent Hruz went to the Xcel Inn where he met Officer Prust at the entrance of Room 322. After consulting with the various law enforcement officers involved, Special Agent Hruz decided to keep

the scene frozen and to obtain a search warrant for the room. Based upon information provided by Special Agent Hruz, a Minneapolis Police Department sergeant, who was also investigating the TCF Bank robbery, obtained a state search warrant for Xcel Inn Room 322. Special Agent Hruz was present when the search of Room 322 commenced, but the search was conducted by the St. Paul Police Department. While the search was underway, Special Agent Hruz received a telephone call regarding the whereabouts of Mr. James. Special Agent Hruz left the Xcel Inn to pursue the information he received from the telephone call. At no point during the execution of the search warrant did Mr. James, or anyone, return to Room 322 or attempt to stop the search.

### G. Locating and Arresting Mr. James at the Economy Inn

Later in the day on July 31, 2006, Officer Lambie received information that Mr. James was now staying at the Economy Inn on University Ave. Officer Lambie and Ramsey County Sheriff Deputy Mark Suchy traveled to the Economy Inn and met with a hotel clerk who confirmed Mr. James was registered to Room 419. Officer Lambie and Deputy Suchy set up surveillance in Room 416, which was located diagonally across from Room 419. Several other officers, including Special Agent Hruz, were also participating in the surveillance, and were positioned in various locations in and around the hotel. Officer Lambie observed Mr. James leave Room 419 and walk down the hallway towards the elevator. Using wireless communication devices, the surveillance team confirmed that Mr. James had gone into the hotel manager's office, and that Mr. James was the person who had rented Room 419. Word was then communicated through the wireless devices that Mr. James was on the elevator heading in the direction of his room.

Upon hearing this information, Officer Lambie and Deputy Suchy positioned themselves outside of the elevator doors. When the doors opened, Mr. James stepped out of the elevator into the common area of the hotel hall. The officers placed Mr. James under arrest and took him downstairs where he was searched. During the search of Mr. James, red dye-stained money was found on his person.

Following the arrest of Mr. James, Special Agent Hruz and other officers entered Room 419 to conduct a security sweep to be sure no other individuals were in the room. During the security sweep, Special Agent Hruz saw red dye-stained money. Special Agent Hruz then "froze" the scene and commenced the process of obtaining a search warrant for the room. The FBI obtained a federal search warrant for Room 419, which was signed by this Court at 9:45 p.m. on July 31, 2006. The search warrant was executed that same evening.

### III. DISCUSSION

Defendant James seeks the suppression of all evidence seized or otherwise obtained, and the fruit of such evidence or seizures. Specifically, Mr. James contends the initial warrantless searches of Xcel Inn Room 322 were illegal, and that the fruit of those searches was the necessary and probable cause for the issuance of the subsequent search warrants and for the arrest of Mr. James. Defendant James argues that all of the evidence seized in this case must therefore be suppressed due to the violations of the Fourth Amendment to the United States Constitution.

#### A. Expectation of Privacy

Defendant argues his room at the Xcel Inn constituted his temporary home over which he had a legitimate expectation of privacy that extended through the termination of his rental period. Defendant's Exhibit 1 identifies the end of Mr. James' rental of Room 322 as 12:00 p.m. on August 1, 2006, the day

after law enforcement officers entered his room on two occasions without a warrant. Defendant contends the officers had no basis for entering his room on July 31, 2006, and that the doctrine of abandonment does not justify the warrantless searches conducted by the law enforcement officers.

Generally, to search a private place, person, or effect, law enforcement must obtain from a judicial officer a search warrant supported by probable cause. *Katz v. United States,* 389 U.S. 347, 357 (1967). This protection extends to temporary dwellings, such as motel rooms. *United States v. Williams*, 346 F.3d 796, 798 (8th Cir. 2003) (*citing United States v. Conner*, 127 F.3d 663, 666 (8th Cir.1997). However, if a defendant has abandoned his interests in the motel room, and its contents, he no longer had legitimate expectations of privacy and is precluded from challenging the search of the room on Fourth Amendment grounds. *See United States v. Hoey,* 983 F.2d 890, 892 (8th Cir.1993). In other words, a warrantless search of an abandoned motel room does not implicate the Fourth Amendment, for any expectation of privacy in the searched room is forfeited upon its abandonment. *See United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997).

The question of abandonment in this context "is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid." *Hoey,* 983 F.2d at 892-93(other citations omitted). Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent. *Tugwell*, 125 F.3d *at 602 (citing United States v. Rem,* 984 F.2d 806, 810 (7th Cir.1993)). "This determination is to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property." *Id.* (*quoting United States v. Nordling,* 804 F.2d 1466, 1469 ( 9th

9

Cir.1986)). Finally, in examining the question of abandonment, the Court considers only the information available to the officers at the time of the search. *Id. (citing Rem,* 984 F.2d at 811 ("In order to determine whether a pre-search abandonment has occurred, the flow of information considered stops at the moment the police officer opened the suitcase.")).

Prior to his first entry into Room 322 of the Xcel Inn on July 31, 2006, Officer Prust knew from the first-hand account he received from the victim that Mr. James had packed his belongings and left the Xcel Inn with "all his stuff." Officer Prust also learned from the motel manager that Mr. James had rented Room 322, and was supposed to check out on that day. The motel manager had also told Officer Prust that he had observed Mr. James leaving the motel premises. Indeed, the motel manager told Officer Prust he had chased Mr. James as he fled from the scene. From the totality of these circumstances, the Court concludes that the objective facts known to Officer Prust when he first entered Room 322 on July 31, 2006, indicated Mr. James had abandoned the room, and that Mr. James he had relinquished any reasonable expectation of privacy he might have previously had in the room.

The fact that Mr. James did not actually check out of the motel prior to his hasty departure on the morning of July 31, 2006, is of little significance to the Court's analysis because his actions, when viewed in totality, amounted to his physical relinquishment of Room 322 when he left with his all of his belongings shortly before 9:00 a.m. The possibility that Mr. James might have later returned to the motel to re-enter Room 322, or to make a payment for an additional night's rent, is not relevant to the Court's determination of abandonment. *Tugwell,* 125 F.3d at 602 (stating abandonment is determined on the basis of the objective facts available to the investigating officers, not on the basis of the [defendants'] subjective intent). Under the totality of the circumstances, the objective facts available to Officer Prust prior to his first entry

into Room 322 are sufficient to demonstrate Mr. James' abandonment of the room prior to Officer Prust's entry into the room.

Moreover, the abandoned status of Room 322 at the time of Officer Prust's first search shortly after 9:00 a.m., did not change prior to Officer Prust's second warrantless entry into the room later that same morning. When Officer Prust returned to the Xcel Inn shortly after 11:00 a.m., he learned Mr. James had not returned to the Xcel Inn, or more specifically, to Room 322, or returned to the motel office to pay for rent for another night's stay. Prior to his second warrantless entry into the room, Officer Prust also knew Room 322 was vacant and did not contain any personal items; knowledge he gained during his first lawful entry into Room 322 earlier that day. The Court's finding of abandonment of the room by Mr. James is, therefore, unchanged as it relates to Officer Prust's second entry into Room 322 shortly after 11:00 a.m on July 31, 2006. Consequently, the Court finds the warrantless entries into Room 322 by Officer Prust were lawful, and the evidence obtained as a result of these searches was lawfully included in subsequent affidavits in support of applications for search warrants at both the Xcel Inn and the Economy Inn. Defendant's request for the suppression of all evidence on the basis that these first two searches at the Xcel Inn were illegal should be denied.

### B.    Inevitable Discovery

The Government alternatively argues that even if Officer Prust's searches of Room 322 violated Mr. James' Fourth Amendment rights, the evidence seized pursuant to the search warrant subsequently obtained by the Minneapolis Police Department at the request of Special Agent Hruz is nonetheless admissible under the doctrine of inevitable discovery. The Court agrees. For the inevitable discovery doctrine to apply, there must have been a reasonable probability the evidence would have been discovered

in the absence of police misconduct, and the police must have been pursing a substantial, alternative line of investigation. *United States v. Alvarez-Gonzalez*, 319 F.3d 1070, 1072 (8th Cir. 2003).

In this case, FBI Special Hruz was already conducting an independent investigation of the TCF Bank robbery when Officer Prust was called to the Xcel Inn to investigate a reported assault. Prior to being contacted by Officer Prust on July 31, 2006, Special Agent Hruz had no knowledge of the assault investigation Officer Prust was conducting. Special Agent Hruz had independent knowledge, however, of the following facts: (1) the TCF Bank had recently been robbed by an individual matching the description of Mr. James; (2) Special Agent Hruz had compared Mr. James' booking photo with an image of the bank robber taken from the bank's surveillance camera and concluded Mr. James was a suspect in the bank robbery; (3) a confidential and reliable informant had told Officer Lambie that Mr. James was in possession of dye-stained money and Mr. James was located in a room at the Xcel Inn.

Special Agent Hruz testified at the motion hearing that he would have sought a search warrant for Mr. James' room at the Xcel Inn on the basis of the information he had independently obtained about Mr. James even if he had not received information from Officer Prust about red dye-stained material in Room 322. From these circumstances the Court concludes Special Agent Hruz's bank robbery investigation had independently led him to Room 322 on July 31, 2006, and the evidence he possessed from that investigation would have been sufficient to demonstrate probable cause for the issuance of a search warrant to search the room. *See e.g., Illinois v. Gates*, 462 U.S. 213, 238 (1983) (Probable cause exists when there are sufficient facts to justify a prudent person's belief "that contraband or evidence of a crime will be found in a particular place"); *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005). Therefore, the Court finds that the red dye-stained items observed by Officer Prust in Room 322 would

have inevitably been discovered by Special Agent Hruz during a search of Room 322 subsequently conducted as part of the FBI's investigation of Mr. James as a suspect in the TCF Bank robbery.

### C. Seizure of Mr. James and Evidence at the Economy Inn

Defendant also challenges the search of his person at the time of his arrest at the Economy Inn and the search of Room 419 following his arrest. Mr. James argues his arrest was without probable cause, and that the search warrant obtained for Room 419 was based on information obtained as the result of the earlier unlawful searches at the Xcel Inn.

First, probable cause to arrest exists if the facts and circumstances known to an officer would warrant a person of reasonable caution in believing that the suspect has, is, or will soon, commit an offense. *United States v McKay*, 431 F.3d 1085, 1090 (8th Cir. 2005). Here, on the morning of Mr. James' arrest, Officer Prust had been called to the Xcel Inn to investigate the report of an assault. Officer Prust interviewed the victim on two different occasions during the morning, having the opportunity to observe and evaluate her demeanor and the credibility of her account of the alleged crime. He also observed her injuries and other corroborating evidence. Officer Prust testified that he found no reason to doubt the victim. Officer Prust also knew from the motel manger's account that Mr. James had fled from the Xcel Inn. Under the totality of these circumstances, probable cause existed to arrest Mr. James for the assault at the Xcel Inn.

In addition, by the time Mr. James was arrested at the Economy Inn, law enforcement officers also had sufficient probable cause to believe he had committed the July 23 TCF Bank robbery. Special Agent Hruz's investigation had revealed Mr. James matched the description of the bank robber shown on the bank surveillance tape, the confidential informant provided information that Mr. James was in possession

of dye-stained money, the assault victim provided information that Mr. James was in possession of a large amount of cash with red dye stains on it, and shreds of U.S. currency with red dye stains had been found during the execution of a search warrant on the room James had been found to have occupied at the Xcel Inn.  Under the totality of these circumstances, probable cause existed to arrest Mr. James for the TCF Bank robbery.  Consequently, the arrest of Mr. James in the common area outside the elevators at the Economy Inn was lawful, and the evidence seized as a result of the search of his person incident to his arrest is admissible.  *See United States v. Pratt,* 355 F.3d 1119, 1124 (8th Cir. 2004)("The search of an arrestee's person has long been upheld as reasonable under the Fourth Amendment ... .").

Finally, Defendant contends the search of his room at the Economy Inn following his arrest was invalid because the application for search warrant included information obtained as a result of the earlier unlawful seizure of his person, and upon the earlier unlawful search of the room at the Xcel Inn.  Defendant argues that had the application in support of the search warrant not included this unlawfully obtained information, the application would have been insufficient to establish probable cause to believe evidence or other contraband would be found in Room 419.

The Court has, however, determined that the searches of Room 322 at the Xcel Inn and the arrest and subsequent search of Mr. James at the Economy Inn were lawful, and did not violate Mr. James' Fourth Amendment rights.  Therefore, any reliance upon information obtained as a result of the searches in the supporting affidavit submitted with the application for the search warrant on Room 419 at the Economy Inn was not improper and the evidence seized during the search of Room 419 should not be suppressed.

Moreover, even if this Court had determined that the Xcel searches and the search incident to Mr. James' arrest were unlawful, and should not have been considered in the application for the search warrant for Room 419, the evidence is not to be excluded on the basis of a lack of probable cause for the search warrant if the executing officers relied in objectively reasonable good faith upon the warrant. *See United States v. Leon,* 468 U.S. 897, 922 (1984). This good faith exception to the exclusionary rule applies unless an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Vinson*, 414 F.3d 924, 930 (8th Cir. 2005) (*quoting Leon*, 468 U.S. at 923). As has been discussed above, even without the paragraph in the affidavit regarding the results of the search of Room 322 at the Xcel Inn, Special Agent Hruz's independent investigation of Mr. James regarding the TCF Bank robbery yielded ample information to include in the affidavit supporting the search warrant that provided the magistrate judge with "a substantial basis for determining the existence of probable cause," *Illinois v. Gates,* 462 U.S. 213, 239 (1983). The Court finds the disputed affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Vinson*, 414 F.3d at 930. Moreover, the Court easily concludes that an objectively reasonable police officer could rely in good faith on the issuance of the warrant as issued given the totality of the information known to officers from the assault victim, from the confidential informant, and from Special Agent Hruz's personal comparison of Mr. James' booking photograph with the image on the bank surveillance camera recorded during the robbery.

In sum, the Court finds no merit in Defendant's contentions that law enforcement officers' searches of the two motel rooms and his person after his arrest were illegal and in violation of his Fourth Amendment

rights. For all of these reasons, the undersigned recommends Defendant's motion to suppress be denied in its entirety.

## IV. CONCLUSION

Based upon the parties' submissions to the Court, the hearing testimony, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 18) and Defendant's Amended Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 26) be **DENIED**.

Dated: December 5, 2006                      s/Jeanne J. Graham

                                             JEANNE J. GRAHAM
                                             United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by December 22, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.