UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 06-0265 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION |
| CALVIN JAMES, | |
| Defendant. | |

---

Erica H. MacDonald, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

James E. Ostgard II, OSTGARD LAW OFFICE, 527 Marquette Avenue, Suite 1925, Minneapolis, MN 55402, for defendant.

Defendant Calvin James is charged with one count of bank robbery in violation of 18 U.S.C. § 2113(a). James seeks to suppress evidence obtained as a result of searches of two hotel rooms and of his person at the time of his arrest. He argues that the warrantless search of the first hotel room violated the Fourth Amendment and that the evidence obtained from the search of the second hotel room and from the search of his person must be suppressed as the fruit of the unlawful search of the first hotel room.

This matter is before the Court on James's objections to the December 5, 2006 Report and Recommendation ("R&R") of Magistrate Judge Jeanne J. Graham. In that R&R, Judge Graham recommends denying James's motions to suppress.[1] This Court has conducted a de

---

[1] James has also filed pro se objections to Judge Graham's R&R. District courts have no obligation to consider pro se objections filed by a represented party. *See United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994). Nevertheless, the Court has reviewed James's

-1-

novo review of the entire file, including the transcript of the suppression hearing before Judge Graham, as required by 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b)(3). For the reasons described below, the Court adopts the R&R and denies James's motions to suppress.

On July 23, 2006, a TCF Bank in Minneapolis was robbed. The robber escaped with cash, but the cash included a security device in the form of a dye pack that would explode and stain the cash with red dye after the robber left the bank. Hr'g Tr. 38 (Sept. 29, 2006) ("Tr."). On July 31, 2006, St. Paul police officer Murray Prust received a call regarding an assault at the Excel Inn in St. Paul. Officer Prust was told that the victim was in the hotel lobby and the suspect (James) was fleeing. Tr. 11. While on his way to the hotel, Officer Prust stopped to talk to the hotel manager, whom he saw a few doors down from the hotel. The hotel manager, who was out of breath, told Officer Prust that he had been trying to catch up with James, but believed that James got on a bus. Tr. 11-12. Officer Prust spoke with the manager for a few minutes, and then went to the hotel, where he spoke with the assault victim. Tr. 12-13. The victim had visible head injuries, was very upset, and was having trouble breathing. Tr. 14, 29. The victim told Officer Prust that James and she had packed up their belongings and were about to leave the hotel when James assaulted her. Tr. 15.

Paramedics arrived to take the victim to the hospital. The hotel manager then accompanied Officer Prust to James's room and unlocked the door. Tr. 16. The hotel manager informed Officer Prust that James was supposed to check out that same day, although hotel records indicated that James had initially said that he planned to check out the following day.

objections and finds that they are without merit.

Tr. 32, 56.  Officer Prust looked around the room and saw drug paraphernalia, but little else.  Tr. 16-17.  He then left the hotel to travel to the hospital to check on the victim.

At the hospital, the victim told Officer Prust that James had held her captive for several days in the hotel room and sexually assaulted her throughout that time.  Tr. 19.  The victim also told Officer Prust that James possessed a large amount of cash that was stained with red dye.  Tr. 20.  Officer Prust then returned to the Excel Inn, was again admitted to the room in which James had been staying, and began collecting possible evidence of a sexual assault.  Tr. 21.  While doing so, Officer Prust found various materials that were stained with red dye, including pieces of currency.  Tr. 21.  Officer Prust called the FBI, and the FBI thereafter obtained a warrant and searched the hotel room.  Tr. 23-24.  Later, the FBI discovered James at another hotel and arrested him.  After conducting a security sweep of James's hotel room, the FBI obtained a search warrant for that room, relying in part on the evidence that had been obtained from the search of James's former room at the Excel Inn.  Tr. 50-52.

James now moves to suppress all of the evidence obtained as a result of these searches, arguing that the search of his room at the Excel Inn was unlawful, and that the search of his second hotel room and person were fruits of that unlawful search.  Judge Graham recommends denying James's motions to suppress.  Judge Graham found that the search of James's room at the Excel Inn was lawful because James had abandoned that room and consequently lacked any expectation of privacy in the room under the Fourth Amendment.

James objects to Judge Graham's finding on both factual and legal grounds.  To begin with, James contends that Judge Graham based her decision in part on an erroneous finding that he had fled from the Excel Inn.  James points out that Officer Prust never actually used the words

"chase" or "pursue" in his testimony, and that Officer Prust never actually described James as fleeing. But a close review of the transcript reveals that several of the prosecutor's questions unmistakably described James as being in flight and that Officer Prust answered those questions without in any way suggesting that the prosecutor's characterization was mistaken. In addition, James raised no objection and made no attempt to clarify Officer Prust's testimony. This is not surprising, as Officer Prust testified that the dispatcher had told him that the suspect "was now fleeing." Tr. 11.

James derides the dispatcher's statement as third- or fourth-hand evidence of his conduct. James also cites a couple of circumstances that could support a finding that he intended to return to the Excel Inn. For example, James points out that the hotel manager was afraid to enter his room even after he had left, and James stresses that he had reserved the room until the following day. This evidence may provide some support for James's contention that he intended to return to the Excel Inn, but this evidence is not inconsistent with a finding that James did not intend to return, and it is outweighed by other evidence that supports a finding that James was in flight. For example, a visibly injured and very upset woman told Officer Prust that, after packing up his belongings and preparing to leave, James had assaulted her. Moreover, an out-of-breath hotel manager told Officer Prust was he had been "trying to catch up" to James. On balance, the evidence establishes that James was in flight.

James also contends that Judge Graham erred in concluding that he abandoned his room at the Excel Inn. James relies primarily on *United States v. Hoey*, 983 F.2d 890, 893 (8th Cir. 1993), in which the court found that the defendant had abandoned her apartment because she was six weeks behind in paying rent, had held a moving sale, and was seen leaving. James points to

differences between Hoey's situation and his situation — such as the fact that he had reserved his hotel room through the following day — and argues that these differences compel a finding that he had not abandoned his hotel room in the way that Hoey had abandoned her apartment.

In determining whether property was abandoned for Fourth Amendment purposes, courts consider all of the circumstances at the time of the alleged abandonment. *Id.* at 892. The facts of this case — while indeed different from the facts in *Hoey* — are more than sufficient to demonstrate that James had abandoned his room at the Excel Inn. Residence in a hotel room is almost by definition transient; in contrast, residence in an apartment is typically long-term. The type of evidence necessary to show that an individual has abandoned an apartment will thus differ from the type of evidence needed to establish that a hotel room has been abandoned. Even putting that difference aside, the evidence of abandonment here is at least as strong as that in *Hoey*. James had packed up his belongings and was in the process of leaving when he attacked his companion and fled the hotel. Based on this evidence, the Court finds that James had abandoned his room at the Excel Inn.

ORDER

Based on all of the files, records, and proceedings herein, the Court ADOPTS the Report and Recommendation of the Magistrate Judge [Docket No. 46]. IT IS HEREBY ORDERED that defendant's motions to suppress evidence [Docket Nos. 18, 26] are DENIED.

Dated: January 3, 2007                    s/Patrick J. Schiltz
                                          Patrick J. Schiltz
                                          United States District Judge