# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

                    Plaintiff,

          v.

Calvin James,

                    Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 06-265 ADM/JJG
Civil No. 10-1387 ADM

_____

Calvin James, pro se.

W. Anders Folk., Assistant United States Attorney, Minneapolis, MN, for Plaintiff.

_____

## I. INTRODUCTION

          This matter is before the undersigned United States District Judge for consideration of

Defendant Calvin James's ("James") Motion to Vacate, Set Aside or Correct Sentence Pursuant

to 28 U.S.C. § 2255 [Docket No. 120] ("2255 Motion").  For the reasons set forth herein,

James's 2255 Motion is denied.

## II. BACKGROUND

          On August 23, 2006, a grand jury issued an indictment charging Calvin James with bank

robbery, in violation of 18 U.S.C. § 2113(a) [Docket No. 11].  James's defense counsel filed

several pre-trial motions including a motion to suppress evidence seized during searches of

James's motel rooms [Docket No. 18].  A hearing was held on September 29, 2006, before

Magistrate Judge Jeanne J. Graham.  Following the hearing, Judge Graham issued a Report and

Recommendation ("R&R") [Docket No. 46] denying James's motion to suppress evidence.  By

Order dated January 3, 2007 [Docket No. 53], Judge Patrick J. Schiltz adopted Judge Graham's R&R.

After a four day trial before Judge Ann D. Montgomery, on February 23, 2007, a jury found James guilty of bank robbery [Docket No. 75]. On June 6, 2007, James was sentenced to 210 months' imprisonment [Docket No. 91].

James's counsel filed a direct appeal arguing that the Court erred by admitting evidence obtained from the searches of his motel rooms. James separately filed a supplemental pro se brief arguing that the Court improperly (1) admitted, without objection, identification testimony; and (2) admitted, without objection, testimony by James's wife. The Eighth Circuit ruled that the searches of James's motel rooms did not violate the Fourth Amendment and "affirm[ed] the judgment of the district court in all respects." United States v. James, 534 F.3d 868, 875 (8th Cir. 2008). The Supreme Court denied James's petition for a writ of certiorari on June 15, 2009. James v. United States, 129 S.Ct. 2818 (2009).

On April 12, 2010, James filed this 2255 Motion, seeking relief on grounds of: (1) prosecutorial misconduct; (2) improper admission of evidence obtained from the motel rooms; (3) improper jury instructions; (4) improper admission of identification testimony; (5) improper admission of privileged testimony; (6) improper designation as a career offender; and (7) ineffective assistance of counsel.

## III. DISCUSSION

### A. Standard of Review

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence. See United States v. Addonizio, 442 U.S. 178, 184-85 (1979). A prisoner is entitled to an

evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. A hearing is unnecessary if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). "A single, self-serving, self-contradicting statement is insufficient to render the motion, files and records of [a] case inconclusive . . . ." Halloway v. United States, 960 F.2d 1348, 1358 (8th Cir. 1992).

**B. Claims Addressed on Direct Appeal**

"[I]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001). James argues his motion to suppress evidence obtained from the searches of his motel rooms was improperly denied. The Eighth Circuit rejected this argument on direct appeal. See James, 534 F.3d at 875. Therefore, James cannot relitigate this issue through his 2255 Motion.

**C. Claims Not Addressed on Direct Appeal**

A defendant's failure to raise an issue on direct appeal constitutes a procedural default barring him from raising it for the first time in a § 2255 motion. Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997). A defendant may overcome procedural default, however, if he can show both (1) a cause that excuses the default and (2) actual prejudice from the alleged errors. Id.

In his direct appeal, James did not raise claims of (1) prosecutorial misconduct; (2) improper jury instructions; (3) his improper designation as a career offender at sentencing; and (4) violations of the Speedy Trial Act.[1]  These claims were available to James on direct appeal, yet he offers no explanation for his failure to raise these issues at that time; thus he cannot satisfy the first prong of the Matthews test.  United States v. Frady, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.").  However, James can overcome the procedural default if he is able to demonstrate that his counsel was ineffective for failing to raise the issue.  United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A] showing of ineffective assistance of counsel satisfies both cause and prejudice.").  Halloway, 960 F.2d at 1358.

**D.  Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  Courts employ a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id.  If a defendant fails to establish prejudice as required by the second part of the Strickland test, a court need not address whether the attorney's representation was objectively reasonable.  Apfel, 97 F.3d at 1076.

---

[1] The Speedy Trial issue was first raised in James's supplemental submission entitled "Pro Se Motion to Dismiss for Denial of Constitutional Rights of Due Process and Right to Speedy Trial" [Docket No. 126].

James alleges that a variety of actions taken by his counsel, James Ostgard, establish ineffective assistance of counsel. These alleged deficiencies include failing to (1) request a jury instruction "[for] a lesser offense [such as] bank larceny[ ]or possession of stolen property;" (2) object to seized evidence without a showing that the warrants were returned; (3) raise the issue of prosecutorial misconduct; (4) request a <u>Daubert</u> hearing regarding the testimony of a forensic video analyst; (5) investigate whether the Government's witnesses from the bank could identify James as the bank robber; (6) raise objections to the admission of evidence based on the Fourth Amendment; (7) investigate whether law enforcement employed suggestive identification procedures; and (8) ensure that James's wife was advised of the marital privilege before testifying.

### 1. Jury Instructions

James claims his counsel was ineffective for failing to request a jury instruction "[for] a lesser offense [such as] bank larceny[] or possession of stolen property." "A defendant is entitled to a lesser-included offense instruction only if 'the evidence adduced at the trial provides a rational basis upon which the jury could find [the defendant] not guilty of the greater but guilty of the lesser offense.'" <u>United States v. Lynch</u>, 800 F.2d 765, 768 (8th Cir. 1986) (citing <u>United States v. Elk</u>, 658 F.2d 644, 648 (8th Cir. 1981)).

In <u>Carter v. United States</u>, the Supreme Court ruled that bank larceny, under 18 U.S.C. § 2113(b),[2] is not a lesser included offense of bank robbery, under 18 U.S.C. § 2113(a).[3] 530 U.S.

---

[2] 18 U.S.C. § 2113(b) provides, in pertinent part:

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or

255 (2000). Thus, James was not entitled to a jury instruction on bank larceny. Furthermore, the primary difference is that "force and violence or . . . intimidation" are elements of the crime of bank robbery, but not bank larceny.[4] At trial, the government had strong evidence that James was guilty of the bank robbery and that he committed the crime using "force and violence . . . or intimidation." The bank teller testified that the bank robber approached her and "said that there was a gun in the bag and that I was being robbed" which caused her to feel scared that he would shoot her or the bank customers. Trial Transcript, Day 2 at 85. No contradictory evidence was introduced. Thus, even if his counsel had requested an instruction on bank larceny, the request would have been denied as there was no basis in the evidence for such an instruction. James's argument that the jury should have been instructed on "possession of stolen property"[5] fails

---

possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both . . .

[3] 18 U.S.C. § 2113(a) provides, in pertinent part:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . Shall be fined under this title or imprisoned not more than twenty years, or both.

[4] See supra nn. 2, 3.

[5] 18 U.S.C. § 2315 provides, in pertinent part:

Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, which have crossed a State or United States

because possession of stolen property is not a lesser included offense of bank robbery (the crimes do not have any elements in common)[6] and he was not charged with that crime. Under these circumstances, James cannot meet his burden of proof on the second prong of the Strickland test. See O'Rourke v. Endell, 153 F.3d 560, 573 (8th Cir. 1998) (finding no prejudice from trial counsel's failure to request lesser-included offense instruction when there was no "powerful, unrefuted evidence" of petitioner's guilt on the greater offense); Kilgore v. Bowersox, 124 F.3d 985, 995 (8th Cir. 1997) (finding no prejudice from trial counsel's failure to request lesser-included offense instruction based on state courts' conclusion that jury never would have convicted petitioner of such offense).

---

boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken; or

Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any falsely made, forged, altered, or counterfeited securities or tax stamps, or pledges or accepts as security for a loan any falsely made, forged, altered, or counterfeited securities or tax stamps, moving as, or which are a part of, or constitute interstate or foreign commerce, knowing the same to have been so falsely made, forged, altered, or counterfeited; or

Whoever receives in interstate or foreign commerce, or conceals, stores, barters, sells, or disposes of, any tool, implement, or thing used or intended to be used in falsely making, forging, altering, or counterfeiting any security or tax stamp, or any part thereof, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing that the same is fitted to be used, or has been used, in falsely making, forging, altering, or counterfeiting any security or tax stamp, or any part thereof--

Shall be fined under this title or imprisoned not more than ten years, or both. . . .

[6] See supra nn. 3, 5.

### 2. Search Warrant Return

James also claims his counsel was ineffective for failing to object to the admission of the search warrant of room 322 at the Exel Inn, as well as the admission of the evidence seized therein, without the search warrant return. However, counsel did object to the admission of the search warrant based on the failure to attach the return, but the objection was overruled. Transcript of September 29, 2006 Motion Hearing at 45 [Docket No. 47]. Counsel then requested production of the return and asked the Court for an opportunity to review the return prior to submitting any briefing on the legality of the search. Id. at 46, 70. The record reflects that Judge Graham ordered the government to provide James's counsel with the search warrant return and counsel chose not to raise this issue further. Thus, there is no factual support for James's claim that his counsel was ineffective for failing to object to evidence on the ground that the search warrants did not have the return attached.

### 3. Prosecutorial Misconduct

James claims that his counsel was ineffective for failing to raise the issue of prosecutorial misconduct. Courts presume "that [prosecutors] have properly discharged their official duties." United States v. Armstrong, 517 U.S. 456, 464 (1992). James presents no evidence of any prosecutorial misconduct, aside from his vague allegations that the prosecutor engaged in vindictive or selective prosecution as a result of James's testimony as a defense witness in an unspecified case. These allegations cannot support a claim that his counsel was ineffective for failing to raise this issue. See United States v. Mentzos, Civil No. 08-1089, Criminal No. 04-173, 2008 WL 2563869, at *3 (D. Minn. June 25, 2008) (holding that petitioner's vague allegations cannot serve as the basis for an ineffective assistance of counsel claim).

**4. <u>Daubert</u> Hearing**

James claims that his counsel was ineffective for failing to request a <u>Daubert</u> hearing challenging the testimony of a forensic video analyst. The analyst testified that still images were enlarged for presentation in the courtroom. James's <u>Daubert</u> challenge fails because he has not explained why the analyst was allegedly unqualified to offer his testimony. At issue is the analyst's testimony that the image shown in the courtroom was "simply a blowup of a portion of" another image. Trial Transcript, Day 2 at 164. The analyst's testimony showed personal knowledge of the subject of his testimony and that enlarging images was a part of his regular job duties. Further, the analyst's testimony did not involve scientific evidence. No prejudice arose from failure to request a <u>Daubert</u> hearing.

**5. Government Eyewitnesses**

James claims that his counsel failed to argue that the government's eyewitnesses, who were present at the bank on the day of the robbery, could not identify him in a photograph array. This allegation is contradicted by the record. James's counsel filed a Declaration in Lieu of Motion to Suppress Eyewitness Identification [Docket No. 22] in which he noted "a photograph array was displayed to one witness, who did not identify the defendant." Consequently, this allegation cannot serve as the basis for an ineffective assistance of counsel claim.

**6. Fourth Amendment Issues**

James alleges that counsel failed to raise objections to the admission of evidence based on the Fourth Amendment. In his Memorandum in Support of Motion to Suppress Evidence from Search [Docket No. 36], and on appeal to the Eighth Circuit, counsel strenuously argued that James had not relinquished his expectation of privacy in his motel rooms and thus the

searches violated the Fourth Amendment.  <u>See</u> Motion to Suppress Evidence from Search at 5-11; <u>James</u>, 534 F.3d at 872.  Contrary to James's assertions, his attorney raised these issues, but they were rejected.  Thus, the record belies James's claim.

### 7.  Identification Testimony

James next argues that the identification procedures used by law enforcement were unreliable.  Approximately one week before trial, two St. Paul police officers visited James's father and later visited James's wife.  Trial Transcript, Day 2 at 169, 172.  The police showed thirteen photographs to both James's father and James's wife.  <u>Id</u>. at 168, 170, 172, 180, 188.  The photographs were enlarged images of the robber taken from the surveillance camera at the TCF Bank on July 23.  <u>Id.</u> at 153-54.  Without disclosing who or what was depicted in the photographs, the police asked James's father and James's wife if they could identify the individual in the photographs.  <u>Id</u>. at 170, 181.  They both separately identified James as the robber in the photographs and testified as such at trial.  <u>Id.</u> at 170, 181.

To determine the reliability of identification procedures, the first query is "whether the identification procedures were impermissibly suggestive."  <u>United States v. Johnson</u>, 56 F.3d 947, 954 (8th Cir. 1995).  If the procedures were impermissibly suggestive, a court must then determine "whether the suggestive procedures created a very substantial likelihood of irreparable misidentification" in light of the totality of the circumstances.  <u>Id.</u>  James asserts that the identification procedures applied to his father and wife were impermissibly suggestive but makes no argument in support of this assertion.  James argues that he had not seen his father in more than two years nor his wife in more than one year, but this argument goes to the reliability of the identification testimony, not whether the identification procedures were impermissibly suggestive.  Given that the police did not provide James's father or James's wife any information

about a crime, and merely asked them whether they recognized the individual depicted in the photographs, the identification procedures were not impermissibly suggestive.

### 8. Marital Privilege

James's final argument challenges the admission of his wife's identification testimony, which James claims was maritally privileged. "Federal courts recognize two distinct marital privileges: the marital confidential communications privilege and the adverse spousal testimony privilege." United States v. Espino, 317 F.3d 788, 795 (8th Cir. 2003). The marital confidential communications privilege protects husband-wife communications. Id. This privilege cannot be invoked here because James's wife did not testify about any conversations she had with James; rather, she testified about her relationship to James, the length of their marriage, observations about the types of clothes she had seen him wear, and that she had previously identified him in a photograph. Trial Transcript, Day 2 at 178-86.

The adverse spousal testimony privilege prevents a spouse from being "compelled to testify [or] foreclosed from testifying against the person to whom he or she is married at the time of trial." Espino, 317 F.3d at 796. The testifying spouse holds the privilege and may waive the privilege without the defendant spouse's consent. Id. James's wife asserts she was never aware that she had the right not to testify against James, yet she also states in her affidavit that the officers "completely ignored my spousal privilege which I invoked on several occasions," clearly indicating that she was aware of such a right. 2255 Motion, Ex. A, ¶ 3. These statements are not only contradictory but also inconsistent with the record. James's wife gave no indication at trial that her testimony was involuntary or that she had already invoked the spousal privilege. Trial Transcript, Day 2 at 178-86. Therefore, the claim of privilege contained in James's wife

single, self-contradicting statement is insufficient to entitle James to an evidentiary hearing under 28 U.S.C. § 2255.  See Halloway, 960 F.2d at 1358.

## IV.  CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds it unlikely that another court would decide the issues raised in this 2255 motion differently, or that any of the issues raised in James's petition would be debatable among reasonable jurists.  Therefore, the Court declines to grant a certificate of appealability.

## V.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that James's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 120] is **DENIED**,[7] James's supplemental, self-styled "Pro Se

---

[7] On July 6, 2010, the Court received James's motion for enlargement of time to respond to the government's brief [Docket No. 134].  This ruling renders James's motion moot, and accordingly, that motion is denied.

Motion to Dismiss for Denial of Constitutional Rights of Due Process and Right to Speedy

Trial" [Docket No. 126] is **DENIED**, and a certificate of appealability shall not issue.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 28, 2010.